**Shenoa L. Payne,** OSB No. 084392
E-mail:  spayne@paynelawpdx.com
**SHENOA PAYNE ATTORNEY AT LAW PC**
1500 SW First Ave, Ste. 1000
Portland, Oregon 97201
Phone: (503) 914-2500

**Hermine Hayes-Klein,** OSB No. 132723
Email: hermine@hayeskleinlaw.com
**LAW OFFICES OF HERMINE HAYES-KLEIN, LLC**
1500 SW First Ave, Ste. 1000
Portland, Oregon 97201
Phone: (503) 593-4598
*United States District Court Admission Pending*

       Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| **BARBARA CHRISTIANSON,** an individual,<br><br>       Plaintiff,<br><br>  v.<br><br>**BAY AREA HOSPITAL DISTRICT**, a municipal corporation of the State of Oregon, d.b.a. Bay Area Hospital; **JASON LEE**, an individual; **STACEY NELSON**, an individual; **JENNIFER COLLINS**, an individual; **BAY CLINIC, LLP**, a limited liability partnership; **STEPHAN J. GROTH, M.D.**, an individual; **ANITA MERRITT, CNM**, an individual,<br><br>       Defendants. | Case No.:<br><br>**COMPLAINT**<br><br>First Amendment Retaliation – Speech and Petition Clause<br>(42 U.S.C. § 1983)<br><br>Whistleblowing<br>(ORS 659A.199; ORS 659A.203)<br><br>Associational Gender-Based Discrimination and Retaliation<br>(ORS 659A.030(1)(a); ORS 659A.030(1)(f))<br><br>Aiding and Abetting<br>(ORS 659A.030(1)(g))<br><br>**DEMAND FOR JURY TRIAL** |

Page 1 – COMPLAINT

SHENOA PAYNE
ATTORNEY AT LAW
1500 SW First Ave, Ste. 1000
PORTLAND, OR 97201
(503) 914-2500
www.paynelawpdx.com

Plaintiff alleges as follows:

## INTRODUCTION

1.      Mistreatment of pregnant and birthing patients by healthcare providers is a well-documented and well-reported global issue.  In the early 2000s, the term "obstetric violence" emerged in Latin America to highlight the historical and ongoing mistreatment within facility-assisted maternity care by healthcare professionals. Both the United Nations ("UN") and the World Health Organization ("WHO") recognize obstetric violence as a form of gender-based violence and a violation of women's human rights. A recent study from the Centers for Disease Control and Prevention ("CDC") in September 2023 reported that approximately one in five women in the United States reported experiencing mistreatment during maternity care.[1] Mistreatment and abuse during maternity care includes, but is not limited to, the provision of healthcare procedures without informed patient consent, failure to provide adequate information, disregard for patient choices or preferences, denial of pain relief, violations of privacy and dignity, and physical and verbal abuse.[2]

---

[1] CDC, Many Women Report Mistreatment During Pregnancy and Delivery, *Vital Signs*, *available at* https://www.cdc.gov/vitalsigns/respectful-maternity-care/index.html (last visited July 25, 2024).

[2] World Health Organization, *The prevention and elimination of disrespect and abuse during facility-based childbirth* (14 Sept 2014), *available at* https://iris.who.int/bitstream/handle/10665/134588/WHO_RHR_14.23_eng.pdf; United Nations, *A human rights-based approach to mistreatment and violence against women in reproductive health services with a focus on childbirth and obstetric violence*, (11 July 2019), *available at* https://digitallibrary.un.org/record/3823698?ln=en&v=pdf (last visited Aug 30, 2024); Garcia, L.M., *Obstetric violence in the United States and other high-income countries: an integrative review*, Sex. Reprod Health Matters 2023; 31(1): 2322194, *available at* https://pubmed.ncbi.nlm.nih.gov/38590127/  (last visited Aug 30, 2024).

Page 2 – COMPLAINT

SHENOA PAYNE
ATTORNEY AT LAW
1500 SW First Ave, Ste. 1000
PORTLAND, OR 97201
(503) 914-2500
www.paynelawpdx.com

2.      Oregon law requires physicians to ensure that all patients freely consent to medical interventions and obligates all physicians to communicate with their patients about the risks of, and alternatives to, any proposed treatment. ORS 127.507; ORS 677.097. The violation of pregnant patients' right to informed consent is unlawful activity that is proven to cause postpartum depression and trauma.[3] Physicians are prohibited from engaging in conduct that constitutes a danger to the health or safety of a patient or the public, including the violation of patient boundaries. OAR 847-010-0073(3).

3.      In the Puerto Rico Supreme Court case, *Cruz Flores et al. v. Ryder Memorial Hospital Inc.*, *et al.*, Chief Justice Oronoz Rodriguez recognized obstetric violence as a form of gender-based violence characterized by the mistreatment and abuse of women during maternity care by healthcare personnel. Chief Justice Oronoz Rodríguez emphasized that recognizing obstetric violence as a form of gender-based discrimination is crucial to ensuring that this mistreatment is recognized, prevented, and legally remedied.[4] The Chief Justice quoted a 2018 Duke Law Review article on the topic:

> "What makes coerced medical procedures in childbirth, and other types of obstetric violence, different from other medical battery is that they are a type of gender-based violence. This is a type of gendered violence because its victims are primarily women, and its origins are traceable to 'how women (and their (dis)abilities) are perceived and

---

[3] *Id.*; *see also* Reed, R. et al., *Women's Descriptions of childbirth trauma relating to provider actions and interactions*, BMC Pregnancy Childbirth, 2017 Jan 10;17(1):21, *available at* https://bmcpregnancychildbirth.biomedcentral.com/articles/10.1186/s12884-016-1197-0 (last visited Aug 30, 2024); Grant, R., *Doctors who ignore consent are traumatizing women during childbirth*, Quartz (qz.com), 5 December 2017, *available at* https://qz.com/1146836/doctors-who-ignore-consent-are-traumatizing-women-during-childbirth (last visited Aug 30, 2024).

[4] *Cruz Flores, et al. v. Ryder Memorial Hospital Inc., et al.*, 110 P.R. Offic. Trans. 18, 31-38 (2022) (Oronoz Rodríguez, C.J., concurring).

Page 3 – COMPLAINT

SHENOA PAYNE
ATTORNEY AT LAW
1500 SW First Ave, Ste. 1000
PORTLAND, OR 97201
(503) 914-2500
www.paynelawpdx.com

perceive themselves in Western patriarchal societies.' Therefore, '[although] it has much in common with the more general experience of alienation and objectification within medicalization… obstetric violence appears to be unique in being directed almost exclusively at women and being experienced and interpreted by women mostly as gender violence, an affront to and banishment of their otherwise healthy, powerful, sexual, and creative embodied subjectivities.' That women are the primary victims of obstetric violence follows from the fact that pregnancy is—by and large—a uniquely female experience."[5]

During Christianson's interview and hiring process at Bay Area Hospital District for a labor and delivery nurse position at the Family Birth Center, Christianson highlighted their expertise in informed consent, trauma prevention, and their advocacy work in the area of obstetric violence. Christianson was assured by Stacey Nelson, nurse manager at Bay Area Hospital District's Family Birth Center, that their expertise in those areas would be welcomed and that the hospital was committed to treating patients with respect. As Christianson proceeded with their employment at Bay Area Hospital District, they received monthly formal and ongoing informal employee evaluations, all of which were positive.

4.      After two months of employment, Christianson witnessed an obstetrician with privileges at Bay Area Hospital, Dr. Stephan J. Groth, repeatedly insert and withdraw his gloved fingers into a patient's anus without informed consent or the patient's knowledge. Christianson reported in good faith to their supervisor, Stacey Nelson, their concerns that Dr. Stephan J. Groth had violated patient consent laws and potentially assaulted a patient.

///

---

[5] *Id.* at 34-35, quoting Borges, M.T.R., *A Violent Birth: Reframing Coerced Procedures During Childbirth as Obstetric Violence*, 67 Duke L.J. 827, 830 (2018), *available at* https://scholarship.law.duke.edu/cgi/viewcontent.cgi?article=3924&context=dlj (last visited Aug 30, 2024).

SHENOA PAYNE
ATTORNEY AT LAW
1500 SW First Ave, Ste. 1000
PORTLAND, OR 97201
(503) 914-2500
www.paynelawpdx.com

5.       Despite Christianson's good faith report and previous positive employment history, Bay Area Hospital unlawfully terminated Christianson "for making inappropriate comments regarding a provider" before their probationary period ended, and shortly after reporting Dr. Stephan J. Groth's conduct.

## JURISDICTION AND VENUE

6.       This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331. Plaintiff's claims arise under 42 U.S.C. § 1983 for the deprivation of the exercise of plaintiff's rights under the speech and petition clauses of the First Amendment to the United States Constitution.

7.       This Court has supplemental jurisdiction over plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a). Plaintiff's state law claims are so related to their federal claims that they form part of the same case or controversy.

8.       Venue is proper in this District under 28 U.S.C. § 1391(a)(2) and (3).  The events giving rise to this Complaint occurred in this district and defendants' conduct occurred within this District.

9.       This complaint is properly filed in the Eugene Division. A substantial part of the events or omissions giving rise to plaintiff's claims occurred in this Division.

## PARTIES

10.       Plaintiff Barbara Christianson is an individual who at all relevant times was employed as a registered nurse at Bay Area Hospital District's Family Birth Center. Christianson at all relevant times was and remains a resident of Oregon. Christianson uses she/they pronouns.

///

Page 5 – COMPLAINT

SHENOA PAYNE
ATTORNEY AT LAW
1500 SW First Ave, Ste. 1000
PORTLAND, OR 97201
(503) 914-2500
www.paynelawpdx.com

11.     Defendant Bay Area Hospital District (hereinafter "Bay Area Hospital") is a municipal corporation of the State of Oregon located in Coos Bay, Oregon with the capacity to sue and be sued. Bay Area Hospital is a health district with the authority to provide healthcare services to residents within its geographical boundary. Bay Area Hospital was Christianson's employer at all relevant times pursuant to ORS 659A.001(4)(a).

12.     Defendant Jason Lee is a resident of Oregon and is an individual who at all relevant times was a Senior Human Resources Business Partner at Bay Area Hospital.

13.     Defendant Jennifer Collins is a resident of Oregon and is an individual who at all relevant times was the Chief Nursing Officer and Manager of the Patient Care Services Division at Bay Area Hospital and was a supervisory manager of Mx. Christianson.

14.     Defendant Stacey Nelson is a resident of Oregon and is an individual who at all relevant times was the nurse manager at Bay Area Hospital's Family Birth Center and the direct supervisor of Mx. Christianson.

15.     Defendant Bay Clinic, LLP (hereinafter "Bay Clinic"), is an Oregon limited liability partnership that at all relevant times employed Dr. Stephan J. Groth and Anita Merritt, CNM, and was affiliated with the Bay Area Hospital.

16.     Defendant Dr. Stephan Groth is a resident of Oregon and is an individual employed as an obstetrician-gynecologist who was at all relevant times affiliated with Bay Area Hospital and employed by Bay Clinic, LLP.

17.     Defendant Anita Merritt, CNM is a resident of Oregon and is an individual employed as a Certified Nurse Midwife who was at all relevant times affiliated with Bay Area Hospital and employed by Bay Clinic, LLP.

Page 6 – COMPLAINT

SHENOA PAYNE
ATTORNEY AT LAW
1500 SW First Ave, Ste. 1000
PORTLAND, OR 97201
(503) 914-2500
www.paynelawpdx.com

## FACTUAL ALLEGATIONS

### The Interview and Hiring Process

18.     On or about October 20, 2022, Christianson applied to Bay Area Hospital's Family Birth Center online.

19.     On or about October 24, 2022, Donna Lopez called and emailed Christianson to schedule an interview with Nelson at Bay Area Hospital's Family Birth Center.

20.     On or about October 25, 2022, Nelson and Angela Christopher, a registered nurse, interviewed Christianson. During the interview process, Christianson highlighted their expertise in informed consent, trauma prevention, advocacy work in the area of obstetric violence prevention and intervention, and their work with Birth Monopoly, an organization focused on education and advocacy regarding legal and reproductive rights in maternal healthcare. Christianson's employment personnel file and resume referenced their work with Birth Monopoly. Christianson stated the importance of working for a hospital that engaged in respectful maternal healthcare, and inquired about staffing ratios, providers, and unit culture during their interview. Nelson assured Christianson that the nursing unit followed the Association of Women's Health, Obstetric, and Neonatal Nurses ("AWHONN") staffing guidelines and that Bay Area Hospital had a full-time midwife hospitalist. Additionally, Nelson assured Christianson that their expertise would be welcome at Bay Area Hospital and that the hospital was committed to respectful maternal healthcare. After the interview, Nelson verbally offered Christianson a night-shift labor and delivery nursing position at Bay Area Hospital's Family Birth Center.

///

Page 7 – COMPLAINT

SHENOA PAYNE
ATTORNEY AT LAW
1500 SW First Ave, Ste. 1000
PORTLAND, OR 97201
(503) 914-2500
www.paynelawpdx.com

21.     On or about October 27, 2022. Lopez sent Christianson a written employment offer, which Christianson signed and returned to Bay Area Hospital's Family Birth Center via email. The employment offer included a lump-sum sign-on bonus of $10,000 and relocation expenses of $5,000 contingent upon Christianson's full-time employment at Bay Area Hospital for three years, which Christianson accepted. Christianson was hired at an hourly rate of $47.99, paid biweekly.

22.     On or about December 4, 2022, Christianson began their first shift at Bay Area Hospital. Their job title was a full-time night-shift registered nurse at Bay Area Hospital's Family Birth Center. Pursuant to the Collective Bargaining Agreement (CBA) between Oregon Nurses Association and Bay Area Hospital, newly hired nurses are placed on a 90-day probationary period. Christianson's probationary period began on November 21, 2022, and was set to end on or about February 18, 2023.

23.     During their probationary period, Christianson received ongoing informal employee evaluations, as well as formal evaluations at 30 and 60 days. Christianson was trained with various preceptors, experienced nurses who monitor a new hire's performance to verify that they are adequately meeting all required competencies.

24.     On or about January 4, 2023, Christianson received their 30-day performance review, which was positive. Bay Area Hospital found Christianson "very kind and personable."

25.     Because Bay Area Hospital was a small hospital, Christianson was asked to take on additional duties that were not part of their job description, including teaching childbirth classes, and cross-training in couplet care (postpartum and nursery care). Nelson repeatedly expressed her appreciation that Christianson was willing to take on additional duties, stating that

Page 8 – COMPLAINT

SHENOA PAYNE
ATTORNEY AT LAW
1500 SW First Ave, Ste. 1000
PORTLAND, OR 97201
(503) 914-2500
www.paynelawpdx.com

Christianson was a "unicorn" in their willingness to cross-train and take on additional duties. Nelson expressed to Christianson that she appreciated the way Christianson communicated respectfully, compassionately, and was knowledgeable on the difficult topic of obstetric violence.

### Reporting Dr. Groth's Unlawful Conduct

26.     On or about January 18, 2023, Christianson was called in to assist with a vaginal birth attended by Dr. Groth. When Christianson entered the room, the patient was lying on her back pushing; however, the infant had some time before it would descend far enough to be born. Dr. Groth was sitting between the patient's legs and as the patient pushed, Christianson observed Dr. Groth repeatedly sliding his gloved fingers in and out of the patient's anus. Dr. Groth did not inform the patient that he was penetrating her anus or ask for the patient's consent. He did not communicate any medical reason for why he would be anally penetrating the patient to either the patient or the nurses present or indicate at any time that there was any complication or concern about the fetus or the delivery. Christianson observed that the patient's position prevented her from being able to see that Dr. Groth was anally penetrating her, and the patient cried out that she was experiencing rectal pain and asked if she was defecating. Dr. Groth did not respond to the patient. Christianson approached the patient, offered to put a warm compress over her perineum, and applied it when the patient consented, which caused Dr. Groth to have to remove his hand from the patient's anus. Christianson observed that Dr. Groth appeared annoyed, stood, snapped off his gloves, and stated that he was leaving, directing Christianson to call him back to the room when the infant was closer to being born.

///

Page 9 – COMPLAINT

SHENOA PAYNE
ATTORNEY AT LAW
1500 SW First Ave, Ste. 1000
PORTLAND, OR 97201
(503) 914-2500
www.paynelawpdx.com

27.     When the patient's infant was almost ready to be born, Dr. Groth was called back into the delivery room. Christianson again witnessed Dr. Groth slide his gloved fingers in and out of the patient's anus while the patient was pushing her infant out. Again, Dr. Groth did not ask the patient for consent or communicate any medical reason why he was anally penetrating the patient to either the patient, or the nurses present. Other than the non-consented anal penetration by Dr. Groth, the patient's delivery was normal and uncomplicated.

28.     After the delivery and based on what she observed, Christianson had both a subjectively good faith, and an objectively reasonable belief, that Dr. Groth had violated state statutes and regulations, including but not limited to ORS 127.507, ORS 677.097, and OAR 847-010-0073(3).

29.     During the next group shift report, the nurse caring for the patient who had given birth with Dr. Groth mentioned that the patient had been complaining of severe rectal pain. The nurse inquired whether there was anything unusual about the birth that would explain the patient's rectal pain. Christianson informed the nurse that she had observed Dr. Groth anally penetrating the patient numerous times with his fingers and without the patient's knowledge or consent. Other nurses responded that they had also seen Dr. Groth anally penetrate patients with his fingers without their consent. One nurse asked whether Dr. Groth was "some kind of pervert," a nurse expressed "why would he do that," and another nurse expressed that Dr. Groth's actions felt "rapey." Christianson questioned whether Dr. Groth fully understood informed consent laws and expressed to other nurses that Christianson would be following up with Nelson.

///

Page 10 – COMPLAINT

SHENOA PAYNE
ATTORNEY AT LAW
1500 SW First Ave, Ste. 1000
PORTLAND, OR 97201
(503) 914-2500
www.paynelawpdx.com

30.     Before leaving the hospital on January 18, 2023, Christianson conferred with
Anita Merritt, CNM, another provider at the hospital and a colleague of Dr. Groth's, regarding
what they had observed, and reiterated their concerns regarding the lack of patient consent.
Christianson told Merritt that they and the other experienced labor and delivery nurses who had
discussed the patient's complaint of rectal pain at the shift report meeting had not observed other
physicians or midwives penetrating patients' anuses during vaginal deliveries, and asked Merritt
whether providers at Bay Clinic utilized the "Ritgen's maneuver" in normal vaginal deliveries, an
obstetric technique involving anal penetration. Merritt replied that the Ritgen's maneuver is "not
really a thing we do any more," and looked visibly uncomfortable when Christianson reported
that they believed that Dr. Groth had not secured the patient's consent to repeatedly and
extensively penetrate her anus, even if Dr. Groth believed for some reason that his actions were
medically advisable.

31.     In Christianson's Family Birth Center Registered Nurse Competencies
assessment, it is clearly indicated that competencies must be completed within 180 days of hire.
Because Christianson was hired on November 21, 2022, their competencies were required to be
completed by May 21, 2023. Nevertheless, Christianson's preceptors, Nurse Megan Sparks,
Nurse Hannah Sevigny, and Nurse Leah Reis signed off on all Christianson's required
competencies as a labor and delivery nurse between January 4, 2023, and January 13, 2023.

32.     On or about January 20, 2023, Christianson had a 60-day check-in meeting with
Nelson. Nelson informed Christianson that they had successfully completed orientation, stating
"congratulations Barbie, you are officially off orientation!" Nelson told Christianson that they
had met all the competencies as a labor and delivery nurse and was a valued member of the

Page 11 – COMPLAINT

SHENOA PAYNE
ATTORNEY AT LAW
1500 SW First Ave, Ste. 1000
PORTLAND, OR 97201
(503) 914-2500
www.paynelawpdx.com

nursing team at Bay Area Hospital. Nelson thanked Christianson and expressed her appreciation for Christianson's willingness to "talk about hard things," their professionalism, and compassion, and stated that the patients and team were lucky to have Christianson. Nelson reiterated her excitement for the training Christianson was developing, titled "Obstetric Violence: What it is and what community can do about it," and asked Christianson to send her a link to it. Nelson stated that Christianson could continue to orient to postpartum couplet care and nursery care and to discuss scheduling orientation shifts with Angela Christopher for those units.

33.     During this same meeting, Christianson reported to Nelson the incident that they had witnessed during the delivery with Dr. Groth. During the meeting, Christianson informed Nelson that the doctor had not received patient consent to penetrate the patient's anus with his fingers, and that Christianson believed that Dr. Groth's non-consented actions could be considered assault, traumatizing for patients, and an example of obstetric violence. Nelson thanked Christianson for their report and asked if they would like to speak directly to Dr. Groth about the incident. Christianson declined because they felt it was appropriate for their supervisor to handle the situation, for the hospital to investigate, and feared retaliation if they were to speak directly to a doctor for whom they were reporting.

34.     Nelson noted Christianson's concerns about informed consent and their concerns about Dr. Groth's conduct in Christianson's employment personnel file. Nelson also noted that Christianson planned to extend orientation days to receive more training on postpartum couplet care and nursery care.

///

///

Page 12 – COMPLAINT

SHENOA PAYNE
ATTORNEY AT LAW
1500 SW First Ave, Ste. 1000
PORTLAND, OR 97201
(503) 914-2500
www.paynelawpdx.com

35.     Upon information and belief, Merritt reported her discussion with Christianson to Dr. Groth and other physicians and nurses employed by Bay Area Hospital and Bay Clinic. Upon information and belief, Merritt and Dr. Groth directed and/or influenced Nelson to solicit feedback from staff that was critical of Christianson.

36.     Between January 19, 2023, and January 26, 2023, Nelson solicited negative reviews regarding Christianson via email from at least six nursing staff members, including Christianson's preceptors, Nurse Kaitlin Kirkeby, Nurse Hannah Sevigny, and Nurse-Midwife Anita Merritt. Until Nelson solicited reviews of Christianson immediately after Christianson reported Dr. Groth, Christianson's employment file contained only positive feedback. The reviews submitted after Christianson reported Dr. Groth centered primarily on Christianson's protected activities of reporting Dr. Groth's conduct and advocating for the rights of pregnant and birthing patients:

- Nurse Leah Reis focused on the fact that Christianson "voiced opinions of provided care that she considered assault or questionable behaviors of a well-respected practitioner."

- Nurse- Midwife Merritt criticized Christianson for "seeing trauma/abusive care where it doesn't exist" and for telling "multiple staff that [a] physician was assaulting the patient."

- Nurse Hannah Sevigny expressed concerns that Christianson would "ruin [the providers at BAH]/our good reputation."

Page 13 – COMPLAINT

SHENOA PAYNE
ATTORNEY AT LAW
1500 SW First Ave, Ste. 1000
PORTLAND, OR 97201
(503) 914-2500
www.paynelawpdx.com

37.     Despite the focus of these reviews on Christianson's report of Dr. Groth, Christianson's coworkers nevertheless praised Christianson's positive attributes, including her commitment to patient advocacy. Nurse Sevigny described Christianson as "kind and welcoming to coworkers," and "gentle and caring to her patients." Midwife Merritt stated that Christianson was a "strong patient advocate." Nurse Kirkeby stated she did not have "a lot of time to work 1:1" with Christianson, but that she was a "huge patient advocate."

38.     On or about January 27, 2023, Nelson padded Christianson's employment file with the negative reviews from the nursing staff that she had solicited.

### Employment Termination

39.     After Christianson reported their good faith belief that Dr. Groth had violated state laws and/or regulations to Nelson, Nelson conferred with Lee and Collins regarding the negative feedback Nelson had solicited, and the three ultimately decided to terminate Christianson's employment. On information and belief, Lee and Collins were either aware of and had knowledge of Christianson's protected activity, or Nelson influenced Lee and Collins to terminate Christianson based on Christianson's protected activity. Lee and Collins were the final decision-makers, had ultimate policy-making authority, and/or ratified the final decision to terminate Christianson's employment.

40.     On or about January 29, 2023, 21 days before Christianson's 90-day probationary period was set to end, Bay Area Hospital terminated Christianson's employment. Nelson requested that Christianson meet with her before Christianson's scheduled shift. Lee also attended the meeting. Once the meeting began, Nelson pulled out a folder and told Christianson that she wanted to review Christianson's orientation, even though Christianson already had

Page 14 – COMPLAINT

SHENOA PAYNE
ATTORNEY AT LAW
1500 SW First Ave, Ste. 1000
PORTLAND, OR 97201
(503) 914-2500
www.paynelawpdx.com

completed their orientation at the 60-day review. Christianson had received only positive

feedback from Nelson and their preceptors throughout their orientation and regular evaluations

and had no reason to expect anything otherwise.

41.    During the meeting, Christianson was informed by Nelson that they had not

satisfactorily completed their probation period. Nelson explained that "although you are kind to

patients and patients actually seem to love you, you have not exhibited Bay Area Hospital's

value of kindness in regard to our providers."

42.    Christianson was shocked and asked if they were being terminated for making a

report about Dr. Groth, adding that terminating them in response to their report was likely

unlawful. Lee did not respond directly but stated that Bay Area Hospital could terminate

Christianson for *any* reason because it is an at-will employer and Christianson was still in their

probationary period.

43.    Bay Area Hospital provided Christianson a written termination letter stating that

they were terminated for making "inappropriate comments regarding a provider," that they

"questioned patient/provider situation with a manager during retention meeting" and that they

chose not to have a discussion with Dr. Groth about their concerns.

## Injury

44.    Defendant's unlawful conduct injured Christianson and denied them an

employment opportunity at Bay Area Hospital. Christianson moved their entire family from

California to Oregon in reliance on Bay Area Hospital's job offer and its representations that it

was a hospital that provided respectful maternal healthcare. As a result of defendants' unlawful

employment practices, Christianson has suffered economic damages in the form of lost wages

Page 15 – COMPLAINT

SHENOA PAYNE
ATTORNEY AT LAW
1500 SW First Ave, Ste. 1000
PORTLAND, OR 97201
(503) 914-2500
www.paynelawpdx.com

and benefits, and expenses that have been or will be paid to mental health professionals.

45. Defendants' unlawful acts have caused the plaintiff noneconomic damages in the form of mental and emotional distress, including humiliation, loss of self-esteem, anxiety, and depression.

**Tort Claim Notice**

46. On or about February 20, 2023, Christianson visited Bay Area Hospital's website page for Patient Relations complaints, which directs individuals to send complaints to Risk Management Bay Area Hospital, 1775 Thompson Rd, Coos Bay, 97420. Christianson wrote a handwritten letter providing the time, place, and circumstances giving rise to this action, including but not limited to a description of Dr. Groth's unlawful conduct, Christianson's report of Dr. Groth to Nelson, Bay Area Hospital's termination of Christianson, their belief that Bay Area Hospital unlawfully terminated them, and that the reasons Bay Area Hospital provided for terminating them were false and merely a pretext to fire them for reporting Dr. Groth.

47. The Bay Area Hospital risk management department is responsible for investigation, adjustment, or defense of claims within the scope of ORS 30.260 to 30.300, or in furnishing or accepting forms for claimants to provide claim information, or in supervising any of those activities.

48. A reasonable person in Bay Area Hospital's risk management department receiving Christianson's February 20, 2023, letter would conclude that Christianson intended to assert a claim for damages against Bay Area Hospital.

///

///

Page 16 – COMPLAINT

SHENOA PAYNE
ATTORNEY AT LAW
1500 SW First Ave, Ste. 1000
PORTLAND, OR 97201
(503) 914-2500
www.paynelawpdx.com

**Oregon Bureau of Labor and Industries Complaint**

49.     On January 22, 2024, Christianson filed a Civil Rights Complaint of Unlawful Employment Practices with the Oregon Bureau of Labor and Industries (BOLI). On August 28, 2024, Christianson received a Right to Sue Letter via email to their attorneys after BOLI administratively closed the complaint without making any formal or final determinations regarding the merit of the allegations in the complaint pursuant to OAR 839-003-0050(8).

**FIRST CLAIM FOR RELIEF**
**Defendants Jennifer Collins, Jason Lee, and Stacey Nelson**
**(42 U.S.C. § 1983 – Speech and Petition Clause)**

50.     Christianson realleges each and every paragraph above and incorporates them herein.

51.     Defendants were at all times acting under the color of state law.

52.     Christianson was engaged in a Constitutionally protected activity.

53.     Defendants retaliated against Christianson for reporting and opposing the unlawful conduct and battery/assault against a patient by Dr. Groth.

54.     Defendants deprived Christianson of their federal First Amendment rights of petition and speech by terminating their employment for opposing and speaking out against the unlawful conduct and battery/assault against a patient.

55.     Christianson was speaking on matters of public concern by reporting Dr. Groth's nonconsensual medical procedure and therefore a battery/assault of a patient.

56.     Christianson's opposition of Dr. Groth's unlawful conduct was a substantial factor in their termination. Had plaintiff not opposed Dr. Groth's conduct or petitioned the government for their grievances pertaining to Dr. Groth's conduct, they would not have been terminated.

SHENOA PAYNE
ATTORNEY AT LAW
1500 SW First Ave, Ste. 1000
PORTLAND, OR 97201
(503) 914-2500
www.paynelawpdx.com

57.     Christianson was speaking in their capacity as a private citizen.

58.     Defendants would not have taken the adverse employment action of discharging Christianson absent their protected speech and/or petitioning conduct.

59.     It is clearly established law that speech on matters of public concern includes reporting abuses, threats to public safety, and unethical conduct.

60.     Plaintiff is entitled to economic and noneconomic damages in an amount to be determined at trial.

61.     Pursuant to 42 U.S.C. § 1988(b), Christianson is entitled to their reasonable attorney fees, costs, and disbursements in prosecuting this claim.

**SECOND CLAIM FOR RELIEF**
**Against Bay Area Hospital**
**(42 U.S.C. § 1983 – Monell Liability)**

62.     Christianson realleges each and every paragraph above and incorporates them herein.

63.     Defendant Bay Area Hospital is liable for the deprivation of plaintiff's First Amendment rights because the deprivation was pursuant to and caused by a Bay Area Hospital custom, policy or practice of retaliating against nurses who oppose unlawful or discriminatory practices by doctors, and a policy or practice of terminating probationary employees who oppose misconduct or unlawful conduct during their probationary period.

64.     On information and belief, Lee was an official who was either delegated final policymaking authority or ratified the decision of a subordinate.

65.     On information and belief, Collins was an official who was either delegated final policymaking authority or ratified the decision of a subordinate.

SHENOA PAYNE
ATTORNEY AT LAW
1500 SW First Ave, Ste. 1000
PORTLAND, OR 97201
(503) 914-2500
www.paynelawpdx.com

66.     Plaintiff is entitled to economic and noneconomic damages in an amount to be determined at trial.

67.     Pursuant to 42 U.S.C. §1988(b), Plaintiff is entitled to their reasonable attorney fees, costs, and disbursements in prosecuting this claim.

### THIRD CLAIM FOR RELIEF
### Against Bay Area Hospital
### Whistleblowing in Violation of ORS 659A.199

68.     Christianson realleges each and every paragraph above and incorporates them herein.

69.     Christianson in good faith reported information that Christianson believed was evidence of a violation of a state and/or federal law, rule, and/or regulation.

70.     Christianson held a subjective, good faith belief at the time of their report.

71.     Christianson's good-faith report was a substantial factor in the termination of their employment.

72.     Plaintiff is entitled to economic and noneconomic damages in an amount to be determined at trial.

73.     Pursuant to ORS 659A.885 and ORS 20.107, Christianson is entitled to their reasonable attorney fees, expert witness fees, and costs.

### FOURTH CLAIM FOR RELIEF
### Against Bay Area Hospital
### Whistleblowing in Violation of ORS 659A.203

74.     Christianson realleges each and every paragraph above and incorporates them herein.

SHENOA PAYNE
ATTORNEY AT LAW
1500 SW First Ave, Ste. 1000
PORTLAND, OR 97201
(503) 914-2500
www.paynelawpdx.com

75.     Bay Area Hospital is a public employer.

76.     Christianson disclosed information that Christianson reasonably believed was evidence of a violation of state, federal, and/or local law.

77.     Christianson's belief was objectively reasonable.

78.     Bay Area Hospital threatened to take and/or did take disciplinary action against Christianson for the disclosure of information that they reasonably believed was evidence of a violation of state, federal, and/or local law.

79.     Christianson's disclosure was a substantial factor in the disciplinary action taken against them.

80.     Plaintiff is entitled to economic and noneconomic damages in an amount to be determined at trial.

81.     Pursuant to ORS 659A.885 and ORS 20.107, Christianson is entitled to their reasonable attorney fees, expert witness fees, costs and disbursements in prosecuting this claim.

## FIFTH CLAIM FOR RELIEF
### Against Bay Area Hospital
### (Associational Gender-Based Discrimination in Violation of ORS 659A.030(1)(a))

82.     Christianson realleges each and every paragraph above and incorporates them herein.

83.     Birthing patients are members of a protected class based on sex and/or gender.

84.     Defendant unlawfully discriminated against Christianson for their association with and advocacy for pregnant and birthing patients – in particular, their opposition to obstetric violence and gender-based violence –  based on the patients' gender and/or sex.

///

Page 20 – COMPLAINT

SHENOA PAYNE
ATTORNEY AT LAW
1500 SW First Ave, Ste. 1000
PORTLAND, OR 97201
(503) 914-2500
www.paynelawpdx.com

85.      Christianson's association with and advocacy for a protected class was a substantial factor in their unlawful discharge.

86.      Plaintiff is entitled to economic and noneconomic damages in an amount to be determined at trial.

87.      Pursuant to ORS 659A.885 and ORS 20.107, Christianson is entitled to her reasonable attorney fees, expert witness fees, costs, and disbursements incurred in prosecuting this claim.

**SIXTH CLAIM FOR RELIEF**
**Against Jason Lee, Stacey Nelson, Jennifer Collins**
**Against Bay Clinic, LLP, Dr. Stephan J. Groth and Nurse Midwife Anita Merritt**
**(Aiding and Abetting in Violation of ORS 659A.030(1)(g))**

88.      Christianson alleges each and every paragraph above and incorporates them herein.

89.      Defendant Bay Clinic, LLP, by and through defendants Dr. Stephen J. Groth and Nurse Midwife Anita Merritt, aided, abetted, incited, compelled, and/or coerced the unlawful termination of Christianson by Bay Area Hospital as alleged in the Third through Fifth Claims for Relief.

90.      Defendants Jason Lee, Stacey Nelson, and Jennifer Collins, aided, abetted, incited, compelled, and/or coerced the unlawful termination of Christianson by Bay Area Hospital as alleged in the Third through Fifth Claims for Relief. Plaintiff maintains this action against defendants Jason Lee, Stacey Nelson, and Jennifer Collins individually pursuant to ORS 30.265(4) and shall assert damages in an amount above the OTCA cap.

91.      Plaintiff is entitled to economic and noneconomic damages in an amount to be

Page 21 – COMPLAINT

SHENOA PAYNE
ATTORNEY AT LAW
1500 SW First Ave, Ste. 1000
PORTLAND, OR 97201
(503) 914-2500
www.paynelawpdx.com

determined at trial.

92.    Pursuant to ORS 659A.885 and ORS 20.107, Christianson is entitled to their reasonable attorney fees, expert witness fees, costs and disbursements incurred in prosecuting this claim.

## PRAYER FOR RELIEF

WHEREFORE, the plaintiff prays that this Court provide a trial by jury and a judgment providing the following relief:

1.    Awarding plaintiff their economic and noneconomic damages in an amount to be determined at trial;

2.    Awarding plaintiff their reasonable attorney fees, costs, and disbursements;

3.    Awarding plaintiff pre-judgment interest on all damages at the highest rate allowed by law; and

4.    Granting such other and further relief as the Court deems just and equitable.

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38, the plaintiff demands trial by jury in this action on all issues triable by a jury.

DATED this 30th day of August, 2024.

SHENOA PAYNE ATTORNEY AT LAW, P.C.

By: *s/ Shenoa L. Payne*
Shenoa L. Payne, OSB No. 084392 (she/her/hers)
1500 SW First Ave, Ste. 1000
Portland, Oregon 97201
Phone: (503) 914-2500
E-mail:  spayne@paynelawpdx.com

Page 22 – COMPLAINT

SHENOA PAYNE
ATTORNEY AT LAW
1500 SW First Ave, Ste. 1000
PORTLAND, OR 97201
(503) 914-2500
www.paynelawpdx.com

HAYES-KLEIN LAW LLC

By: *s/ Hermine Hayes-Klein*
     Hermine Hayes-Klein**,** OSB No. 132723 (she/her/hers)
     1500 SW First Ave, Ste. 1000
     Portland, Oregon 97201
     Phone: (503) 593-4598
     Email: hermine@hayeskleinlaw.com
     *United States District Court Admission Pending*

     *Attorneys for Plaintiff*

Page 23 – COMPLAINT

SHENOA PAYNE
ATTORNEY AT LAW
1500 SW First Ave, Ste. 1000
PORTLAND, OR 97201
(503) 914-2500
www.paynelawpdx.com